IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SIERRA ROACH,                                    *

                                                 *

    Plaintiff                                    *

    v.                                           *            CIVIL NO. JKB-15-1974

                                                 *

NAVIENT SOLUTIONS, INC.                          *

    Defendant                                    *

*      *      *      *      *      *      *      *      *      *      *      *

## MEMORANDUM

Sierra Roach ("Plaintiff") brought this *pro se* action against Navient Solutions, Inc. ("NSI"), formerly known as Sallie Mae, Inc. ("SMI") ("Defendant"), seeking damages under the Telephone Consumer Protection Act of 1991 ("TCPA"), as amended, 47 U.S.C. § 227, and under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681n, 1681o. Now pending before the Court is Defendant's Motion to Compel Arbitration and to Stay Action. (ECF No. 7.)[1] The issues have been briefed (ECF Nos. 8, 13 & 16), and no hearing is required, Local Rule 105.6 (D. Md. 2014). For the reasons explained below, Defendant's Motion to Compel will be GRANTED.

## I. *Background and Procedural Posture*

Defendant, a student-loan servicer, avers that it has a contractual relationship with Plaintiff with respect to five private student loans, the funds of which were disbursed to Bowie State University on Plaintiff's behalf between September 2007 and September 2010. (ECF No.

---

[1] Also pending are Defendant's Request for Judicial Notice (ECF No. 16–3) and Plaintiff's Motion Requesting Leave to File Sur-Reply (ECF No. 19). These matters will be addressed below.

8–1 at 2.)  The original principal balances of these loans totaled $68,894.  (ECF No. 8 at 2.)  It appears that the loans became delinquent in or around December 2013.  (ECF No. 16–2 at 43.)

Each loan is associated with a promissory note[2] containing, *inter alia*, an arbitration agreement providing that "either party may elect to arbitrate—and require the other party to arbitrate—any Claim under the [agreement's] terms and conditions."  (ECF No. 8–1 at 9, 16, 25, 34, 45.)  Among those parties authorized to compel arbitration are the lender and any subsequent holder of the note; SMI and its parents, subsidiaries, and affiliates; and any predecessors, successors, and assigns of these entities.  (*Id.*)  The arbitration agreements are broadly written: each agreement spans "any legal claim, dispute or controversy . . . that arises from or relates in any way to [the] Note," including, without limitation, "disputes concerning the validity, enforceability, arbitrability or scope of [the] Arbitration Agreement or [the] Note" and disputes involving alleged violations of "statute, regulation or common law."  (*Id.* at 10, 17, 26, 35, 46.)  The agreements state that they are made pursuant to transactions involving interstate commerce and governed by the Federal Arbitration Act ("FAA" or "the Act"), 9 U.S.C. §§ 1 *et seq.* (*Id.*)

On June 16, 2014, Plaintiff allegedly contacted Defendant to "dispute the payment claims associated with [her] alleged debt."  (ECF No. 1–4 at 2.)  Plaintiff stated that she had "not certified nor authenticated signature [*sic*] or been a willing participant to any endorsements"; that she was "not the party listed [on the] account[s]"; and that her "personal information has been unlawfully used."  (*Id.*)  Plaintiff revoked any prior consent to call her cell phone through an

---

[2] The loan applications appended to Defendant's Motion to Compel, which include Plaintiff's name and current cellular phone number and which appear to have been electronically signed by her, explicitly cross-reference the promissory notes by code number and through a conspicuous statement advising borrowers not to sign until they thoroughly review such notes.  (ECF No. 8–1 at 4, 11, 18, 27, 36.)  Defendant has also supplied confirmatory memoranda and Truth in Lending disclosures that it mailed to Plaintiff shortly after approving her loans.  The approved loan amounts identified on these documents (ECF No. 16–2 at 3, 6, 10, 12, 15), which are consistent with the amounts requested on the loan applications, are also noted on Plaintiff's TransUnion report (ECF No. 13–3).  Following the breadcrumbs, and given the dearth of evidence tending to discredit the documents that Defendant has supplied, the Court is satisfied—for the purpose of resolving the pending Motion to Compel—that the notes and the provisions therein apply to the alleged debts at the center of Plaintiff's TCPA and FCRA claims.

automated dialing system or prerecorded dialer, and she demanded that Defendant complete a lengthy "Notice of Interrogatives [*sic*]" concerning the status of her alleged debt.  (*Id.* at 2-3; ECF No. 1–2.)  Nevertheless, Plaintiff claims that Defendant continued to call her cellular phone via an automated system, ostensibly for debt-collection purposes.  (ECF No. 1 at 3-4.)[3]

Plaintiff further alleges that her credit reports with the three major reporting bureaus—Equifax, Experian, and TransUnion—contained inaccurate information relating to the student loans serviced by Defendant.  (*Id.* at 5.)  She apparently initiated a formal dispute pursuant to 15 U.S.C. § 1681i; thereafter, she claims that Defendant "deleted all for [*sic*] trade lines with Transunion [*sic*] and Experian, but verified the four tradelines with Equifax." (*Id.*)[4]  As a result, Plaintiff perceives that Defendant has injured her by "continuing to . . . report inaccurate, unverifiable derogatory information to [her] Equifax credit file." (*Id.*)

Plaintiff filed the present action on July 6, 2015, seeking damages under the TCPA and the FCRA.  (*Id.* at 8.)  Defendant promptly responded with a Motion to Compel Arbitration and to Stay Action. (ECF No. 7.)  Plaintiff opposed Defendant's Motion (ECF No. 13), and Defendant replied (ECF No. 16).  The Motion is now ripe for decision.

## II.  Legal Framework

The FAA stipulates that, in any contract involving interstate commerce, a provision through which the parties agree to arbitrate their disputes shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The Act provides "two parallel devices for enforcing an arbitration

---

[3] Elsewhere in her Complaint, Plaintiff states that the "burden is on Defendant to demonstrate that Plaintiffs [*sic*] gave Arcadia Recovery Bureau his [*sic*] express consent to call his [*sic*] cell phone."  (ECF No. 1 at 3.)  Plaintiff appears to allege that "Arcadia Recovery Bureau" a nonparty, may have been acting as a debt collector on Defendant's behalf, but the details of any such arrangement are unclear in the Complaint and absent in the subsequent briefing.  To the extent that Plaintiff seeks damages from "Arcadia Recovery Bureau" (ECF No. 1 at 6), she should seek leave to amend her Complaint to name that entity as a party.

[4] Given that Plaintiff's dispute concerns *five* student loans, each of which is reported separately on a printout from Plaintiff's TransUnion report (ECF No. 13–3), her reference to "four tradelines" is puzzling.

3

agreement:  a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983), *superseded on other grounds as stated in Bradford-Scott Data Corp. v. Physician Comput. Network, Inc.*, 128 F.3d 504, 506 (7th Cir. 1997).  The Act "reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 25 (2011) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631 (1985)).  Accordingly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone*, 460 U.S. at 24-25, and the Court must not deny a party's request to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," *Greenville Hosp. Sys. v. Emp. Welfare Benefit Plan*, No. 14-2170, 2015 WL 5935095, at *3 (4th Cir. Oct. 13, 2015) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

Despite this presumption favoring alternative dispute resolution, arbitrability is at bottom a question of contract interpretation:  a party cannot be required to arbitrate a dispute if it has not contractually agreed to do so.  Thus, "a litigant can compel arbitration under the FAA if he can demonstrate '(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction . . . to interstate or foreign commerce, and (4) the failure . . . of the [opposing party] to arbitrate the dispute." *Grant-Fletcher v. Collecto, Inc.*, Civ. No. RDB-13-3505, 2014 WL 1877410, at *5 (D. Md. May 9, 2014) (alteration in original) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)).  State contract law determines the validity of an arbitration

agreement.  *Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005).[5]  The "party

resisting arbitration bears the burden of proving that the claims at issue are unsuitable for

arbitration."  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).[6]

As discussed below, Plaintiff disputes NSI's authority to enforce the arbitration

agreements in the promissory notes.  She also asserts that she does not recall executing the loan

applications or receiving the funds.  "When a party moves to compel arbitration and the validity

of the purported arbitration agreement between the parties is disputed, the motion is treated as

one for summary judgment."  *Whitten v. Apria Healthcare Grp., Inc.*, Civ. No. PWG-14-cv-

3193, 2015 WL 2227928, at *2 (D. Md. May 11, 2015); *accord Kennedy v. ADF MidAtlantic,*

*LLC*, Civ. No. JKB-15-0346, 2015 WL 6596918, at *1 (D. Md. Oct. 27, 2015); *Rose v. New Day*

*Fin., LLC*, 816 F. Supp. 2d 245, 251 (D. Md. 2011).  When evaluating a motion for summary

judgment, the Court will grant judgment to a movant who shows that (1) there is no genuine

dispute as to any material fact and (2) the movant is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to

current Rule 56(a)).  No genuine issue of material fact exists if the opposing party fails to make a

---

[5] The parties did not address *which* state law governs interpretation of the arbitration agreements here.  In a
federal-question case that incorporates state-law issues, the district court "applies the choice-of-law rules of the state
in which it sits unless a compelling federal interest directs otherwise."  *Baker v. Antwerpen Motorcars Ltd.*, 807 F.
Supp. 2d 386, 389 n.13 (D. Md. 2011).  Maryland courts generally follow the *lex loci contractus* rule, applying the
law of the jurisdiction where a contract was formed to determine its validity and effect.  *Kramer v. Bally's Park
Place, Inc.*, 535 A.2d 466, 467 (Md. 1988); *see also Konover Prop. Tr., Inc. v. WHE Assocs., Inc.*, 790 A.2d 720,
728 (Md. Ct. Spec. App. 2002) ("For choice-of-law purposes, a contract is made where the last act necessary to
make the contract binding occurs.").  Here, the loan applications indicate that Plaintiff had been attending Bowie
State University in Bowie, Maryland, but that her permanent address was in Lawrenceville, New Jersey.  (ECF No.
8–1 at 4, 11, 18, 27, 36).  SMI/NSI is a Delaware corporation (ECF No. 16–1 at 5), but its extensive correspondence
with Plaintiff emanated from Pennsylvania (ECF No. 16–2).  Fortunately, the Court need not attempt to unravel the
mystery of which state law governs:  as discussed below, Plaintiff's primary opposition theory is based on a simple
misreading of a straightforward contract term, and she raises no alternative challenges to the validity of the
arbitration agreement that might require more nuanced contract interpretation or legal analysis.
[6] *See also Gen. Drivers, Warehousemen & Helpers Local Union No. 509 v. Ethyl Corp.*, 68 F.3d 80, 83 (4th Cir.
1995) ("[W]hen deciding whether a dispute is arbitrable, courts may not judge the merits of the claim put forward.
Even claims that courts might deem without merit are entitled to arbitration if the parties agreed in their contract that
such issues were arbitrable."  (citation omitted)).

sufficient showing on an essential element of her case as to which she would have the burden of proof. *Celotex Corp.*, 477 U.S. at 322-23. The "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The facts themselves, and the inferences to be drawn therefrom, must be viewed in the light most favorable to the party opposing summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). Even so, the opponent may not rest upon the mere allegations or denials of her pleading but must instead, *by affidavit or other evidentiary showing*, set out specific facts showing a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits must be made on personal knowledge with such facts as would be admissible in evidence and must affirmatively show the competence of the affiant to testify to the matters stated therein. Fed. R. Civ. P. 56(c)(4).

### III. *Plaintiff's Opposition Theory*

The Court preliminarily notes that three of the four *Whiteside* arbitrability requirements are plainly satisfied here: there is a dispute between the parties; the underlying transactions relate to interstate commerce;[7] and Plaintiff has opposed arbitration. *See* 940 F.2d at 102. The parties' disagreement hinges on the second *Whiteside* requirement, *i.e.*, the existence of a valid written agreement encompassing their dispute.

Plaintiff does not question Defendant's assertion that the subject matter of her FCRA and TCPA claims would fall within the broad parameters of the arbitration agreements if such

---

[7] The arbitration agreements state that the underlying transactions involve interstate commerce, and Plaintiff does not contest this point. *Cf. Dwyer v. Discover Fin. Servs.*, Civ. No. WMN-15-2322, 2015 WL 7754369 (D. Md. Dec. 2, 2015) ("The United States Court of Appeals for the Fourth Circuit has held that the FAA 'does not require proof by affidavit or other specific evidence of the nexus to interstate commerce. Where . . . the party seeking arbitration alleges that the transaction is within the scope of the Act, and the party opposing application of the Act does not come forward with evidence to rebut jurisdiction under the federal statute, we do not read into the Act a requirement of further proof by the party invoking the federal law.'" (quoting *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 978 n.4 (4th Cir. 1985))).

agreements are enforceable, and the Court has little difficulty concluding that these claims would be covered:  the agreements are drafted to encompass any claim, dispute, or controversy arising from or relating to the notes, including statutory and regulatory claims.  (ECF No. 8–1 at 10, 17, 26, 35, 46.)  For that matter, other courts have recognized that claims arising under the FCRA and the TCPA may be properly subject to arbitration.  *Compare Johnson v. Springleaf Fin. Servs.*, No. 2:15-CV-1268-RDP, 2015 WL 4985472, at *2 (N.D. Ala. Aug. 20, 2015) ("This court . . . cannot say that Congress did not intend FCRA claims to be subject to arbitration and, therefore, holds that Plaintiff's FCRA claim is arbitrable under the FAA."), *with Tuttle v. Sallie Mae, Inc.*, Civ. No. 1:13-CV-183 JD-RBC, 2014 WL 545379, at *6 (N.D. Ind. Feb. 11, 2014) ("[Plaintiff] has not succeeded in establishing that Congress intended to preclude parties from agreeing to arbitrate TCPA claims.").

Rather than challenging the scope of the arbitration agreements, Plaintiff contends that the agreements should have no application whatsoever:  because NSI is a separate entity from Sallie Mae Bank (the lender identified on three of the five promissory notes),[8] Plaintiff argues that NSI has no authority to enforce the notes or the arbitration agreements therein.  (ECF No. 13 at 6.)[9]  As Defendant is quick to point out, however, NSI was formerly known as SMI, the loan servicer identified in the notes:  the entity changed its name in May 2014.  (ECF No. 16–1 at 5.)[10]  Whatever rights SMI may have held necessarily accrue to NSI; they are one and the same.

---

[8] Sallie Mae Bank is identified as the lender on the third, fourth, and fifth promissory notes.  (ECF No. 8–1 at 19, 28, 39.)  The lender field is blank on the first and second promissory notes, but the Truth in Lending disclosures dispatched shortly after those loans were approved identify the lender as JPMorgan Chase Bank, N.A.  (ECF No. 16–2 at 5, 8.)

[9] Plaintiff adds that NSI "has failed to produce any documentation to substantiate they [*sic*] are [a] subsequent holder of the alleged note[s]."  (ECF No. 13 at 7.)  She devotes the remainder of her brief to a summary of certain provisions of the Uniform Commercial Code as adopted in Maryland.  (ECF No. 13 at 7-9.)  These provisions have no bearing on the Court's analysis, however, as the plain language of the notes belies Plaintiff's assumption that only lenders or subsequent holders have arbitration rights.

[10] Defendant asks the Court to take judicial notice of the "Certificate of Amendment of Certificate of Incorporation of Sallie Mae, Inc." appended to its reply brief.  (ECF Nos. 16–1 & 16–3.)  Courts routinely take notice of public

More to the point, the arbitration agreements are drafted expansively, extending rights not only to the lenders but also to SMI (now NSI); its parents, subsidiaries, and affiliates; and its predecessors, successors, and assigns. (ECF No. 8–1 at 9, 16, 25, 34, 45.) Thus, even were NSI a materially distinct entity from SMI (it is not), that would make no difference: as a member of the extended Sallie Mae family, NSI is contractually empowered to compel arbitration of Plaintiff's claims.

Plaintiff also passingly asserts that she "does not recall receiving a loan or executing any of the documents attached to [Defendant's Motion to Compel]" and therefore "specifically denies executing any of the documentation submitted and specifically denies the authenticity of any signature allegedly executed by [her]." (ECF No. 13 at 1.) Unlike Plaintiff's theory regarding NSI's authority under the arbitration agreements, which is easily dispelled by the plain language of the agreements themselves, Plaintiff's alternate theory has at least superficial appeal. Had Plaintiff presented an affidavit, a declaration, or some other admissible evidence unequivocally showing that she disputes the existence or validity of her student-loan debt, the Court might have been inclined to defer Defendant's Motion to Compel and grant limited discovery on the threshold question of arbitrability. After all, if Plaintiff truly did not sign the loan applications that Defendant has proffered, then she necessarily did not agree to the terms of the promissory notes—and she could not be compelled to arbitrate her TCPA and FCRA claims if she did not agree to arbitration in the first place. *See Gregory v. Interstate/Johnson Lane Corp.*, 188 F.3d 501 (4th Cir. 1999) (per curiam) (where plaintiff stated under oath that she had no knowledge of agreements at issue and neither signed them nor authorized an agent to sign on

---

records. *See, e.g.*, *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 881 (4th Cir. 2014), *cert. denied sub nom. Dammeyer v. Mun. Mortg. & Equity, LLC*, 135 S. Ct. 113 (2014); *In re Coinstar Inc. S'holder Derivative Litig.*, No. C11-133 MJP, 2011 WL 5553778, at *2 (W.D. Wash. Nov. 14, 2011). The Court sees no reason why it should not take notice of the Certificate of Amendment provided here, particularly as it is germane to Plaintiff's primary theory in her opposition brief. Defendant's request (ECF No. 16–3) will be granted.

her behalf, and where plaintiff further introduced the opinion of a handwriting expert who opined that her purported signature was a forgery, district court erred in compelling arbitration without making a threshold determination that plaintiff was bound by agreements); *Hudson v. Babilonia*, No. 3:14-cv-01646 (MPS), 2015 WL 1780879 (D. Conn. Apr. 20, 2015) (where plaintiff proffered affidavit stating that he had never cosigned Sallie Mae promissory note and that he had disputed debt from the time he was first notified about it, court found genuine dispute concerning alleged arbitration agreement and consequently ordered discovery).

But Plaintiff has proffered no such evidence.  Aside from her unsworn *ipse dixit* in her opposition memorandum,[11] she supplied an affidavit stating that she has "no knowledge" about NSI or any contractual relationship between NSI and herself, adding that she "never received credit, money, services, or a loan" from NSI.  (ECF No. 13–1 at 1.)  But this attestation clearly stems from Plaintiff's mistaken belief that NSI is somehow distinct from Sallie Mae.  Notably absent from the affidavit is any disavowal of a contractual relationship with SMI or with the lenders themselves (JPMorgan Chase Bank and Sallie Mae Bank).  Plaintiff never denies— under oath or under the penalties for perjury—that she signed the loan applications and received the funds.[12]  Her sworn unfamiliarity with NSI is irrelevant to the pending Motion to

---

[11] Plaintiff's assertion that she "does not recall" receiving a loan is not merely unsworn, it is also unhelpfully oblique.  *Cf. Dassero v. Edwards*, 190 F. Supp. 2d 544, 555 (W.D.N.Y. 2002) ("[I]t is not necessarily enough for plaintiffs simply to aver, in conclusory fashion, that they do not recall signing [an a]greement. . . . [A] 'party cannot place the making of [an] arbitration agreement in issue simply by opining that no agreement exists.  Rather, that party must substantiate the denial of the contract with enough evidence to make the denial colorable.'" (quoting *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 855 (11th Cir. 1992))).

[12] Plaintiff separately appended a "Notice of Fraud/Identity Theft" to her Complaint and her opposition memorandum; she alleges that she mailed this Notice to Defendant in June 2014.  In the Notice, which is supposedly made under the penalties for perjury, Plaintiff states that she has "not certified nor authenticated signature [*sic*] or been a willing participant to any endorsements" and that she is "not the party listed" on the loan accounts.  (ECF No. 13–6 at 2.)  At first blush, Plaintiff's Notice may seem like the kind of evidence tending to create a genuine dispute of material fact.  But a closer examination of the document reveals equivocation:  Plaintiff concludes by declaring that she "hereby and herein reserve[s] the right to amend and make amendments to this document as necessary." (*Id.* at 4.)  That is not the kind of unqualified certification contemplated by 28 U.S.C. § 1746, and it renders the contents of Plaintiff's "Notice" no more useful for the purpose of resolving Defendant's Motion to Compel than is her unsworn *ipse dixit* in her brief.

Compel[13]—and since Defendant has proffered an affidavit attesting to a contractual relationship with Plaintiff, along with substantial documentation in evidence of this relationship, the Court finds no genuine dispute of material fact concerning arbitrability.  For that reason, and in light of the emphatic federal policy in favor of arbitration, *Cocchi*, 132 S. Ct. at 25, the Court will grant Defendant's Motion to Compel.[14]

## IV. Plaintiff's Proposed Surreply

On November 6, 2015, nearly a month after Defendant filed its reply brief, Plaintiff submitted a Motion Requesting Leave to File Sur-Reply.  (ECF No. 19.)  Plaintiff contends that "it has been an extreme burden to conduct the proper research . . . given [her] work schedule"; that she has "discovered substantial information . . . which would have a significant impact on the ruling for this motion"; and that it would be "extremely prejudice [*sic*] to not allow this . . . sur reply [*sic*] to be considered."  (ECF No. 19 at 2.)

Surreplies are highly disfavored in this District.  Pursuant to Local Rule 105.2(a) (D. Md. 2014), "[u]nless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."  The Court *may* allow such memoranda "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply."  *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004) (per

---

[13] Moreover, Plaintiff's affidavit strains credulity.  Plaintiff appended two letters to her opposition memorandum—the first written by an agent for NSI and addressed to her (ECF No. 13–8) ("First Letter"); the second written by her and addressed to NSI (ECF No. 13–9) ("Second Letter").  In the First Letter, dated May 8, 2015, NSI reminded Plaintiff that it had continually worked with her to resolve her debt, and it warned her that it might refer the defaulted accounts to a debt-collection attorney or a collection agency.  In the Second Letter, dated June 9, 2015, Plaintiff neither disputed that NSI had attempted to work with her nor disclaimed the debt.  Instead, she simply accused NSI of violating the TCPA and threatened litigation.

[14] In so doing, the Court finds itself in good company, joining a rising number of courts that have found the arbitration agreements in SMI/NSI promissory notes enforceable.  *See, e.g.*, *Donley v. Sallie Mae, Inc.*, No. 5:14CV165, 2015 WL 1650097 (N.D. W. Va. Apr. 14, 2015); *Kelley v Sallie Mae, Inc.*, No. 5:14CV138 (STAMP), 2015 WL 1650080 (N.D. W. Va. Apr. 15, 2015); *Schriever v. Navient Sols., Inc.*, No. 2:14-cv-596-FtM-38CM, 2014 WL 7273915 (M.D. Fla. Dec. 19, 2014); *Jones v. Sallie Mae, Inc.*, No. 3:13-cv-837-J-99MMH-MCR, 2013 WL 6283483 (M.D. Fla. Dec. 4, 2013); *Cyganiewicz v. Sallie Mae, Inc.*, Civ. No. 13-40067-TSH, 2013 WL 5797615 (D. Mass. Oct. 24, 2013).

curiam).  In this case, however, Plaintiff's proposed surreply is not responsive to any arguments raised in Defendant's reply brief; rather, Plaintiff presents an entirely new theory for opposing arbitration, arguing that the SMI/NSI loan applications did not adequately incorporate the arbitration agreements by reference.  (ECF No. 19–1 at 1.)  Had Plaintiff wished to present this novel argument, she should have done so in her opposition brief, thereby giving Defendant due notice and an opportunity to reply.

Moreover, even were the Court inclined to depart from the well-conceived briefing schedule prescribed by the Local Rules and grant Plaintiff's request, her proposed surreply would be of little use to her.  While reviewing the document, the Court was struck by two oddities:  (1) Plaintiff appears to have abandoned her principal theory that NSI is not authorized to enforce the arbitration agreements; and (2) Plaintiff cites extensively to the case law of West Virginia, a body of law neither binding on nor particularly relevant to proceedings in this Court.  Some cursory research revealed that large portions of Plaintiff's proposed surreply are lifted verbatim from plaintiff-respondent's brief in an analogous but unrelated action, *Navient Solutions, Inc. v. Robinette*, No. 14-1215, 2015 WL 6756859 (W. Va. Nov. 4, 2015).[15]  Two days before Plaintiff filed her pending Motion, the Supreme Court of Appeals of West Virginia *rejected* respondent's theory in *Robinette* and ruled in NSI's favor—doubtless unwelcome news for Plaintiff here.  In denying her request to file a surreply, the Court suspects it is doing Plaintiff a favor.[16]

---

[15] This being so, it is unclear why it took Plaintiff nearly a month after Defendant filed its reply brief to submit her proposed surreply; her assertion that it has been an "extreme burden to conduct the proper research" (ECF No. 19 at 2) seems dubious, given how little of the proposed surreply is original material.

[16] Of course, this Court is not bound by the rulings of the Supreme Court of Appeals of West Virginia on matters where West Virginia law is not implicated, but it hastens to add that it agrees with that court's analysis.  Ms. Robinette's theory, co-opted by Plaintiff here, boiled down to three basic propositions:  (1) the SMI/NSI loan application itself makes no mention of arbitration; (2) the cross-reference to the promissory note is too generalized to place the reader on notice of the note's contents; and (3) the arbitration clause itself is buried toward the end of the promissory note and thus unlikely to catch the reader's attention.  As the *Robinette* court explained, however, by signing each loan application, the borrower expressly agrees to be bound by the terms and conditions of the accompanying promissory note.  "[T]he fact that Ms. Robinette failed to locate and read the promissory note

### V. Conclusion

For the foregoing reasons, an Order shall enter DENYING Plaintiff's Motion Requesting Leave to File Sur-Reply (ECF No. 19); GRANTING Defendant's Request for Judicial Notice (ECF No. 16–3); and GRANTING Defendant's Motion to Compel Arbitration and to Stay Action (ECF No. 7).[17]

DATED this 10th day of December, 2015.

BY THE COURT:

_____/s/_____

James K. Bredar
United States District Judge

---

portions of the contracts she entered does not excuse her from their terms[.]" *Navient Sols., Inc. v. Robinette*, No. 14-1215, 2015 WL 6756859, at *4 (W. Va. Nov. 4, 2012); *cf. Grant-Fletcher v. Collecto, Inc.*, Civ. No. RDB-13-3505, 2014 WL 1877410, at *7 (D. Md. May 9, 2014) ("The fact that [plaintiff] may have chosen not to access or read the language of the Arbitration Agreement does not render it invalid or non-binding."); *Walther v. Sovereign Bank*, 872 A.2d 735, 754 (Md. 2005) ("If petitioners did not [read the agreement] before they signed the agreement, they have no persons to blame but themselves. . . . [W]e are loath to rescind a conspicuous arbitration agreement that was signed by a party whom now, for whatever reason, does not desire to fulfill that agreement.").

[17] Because the Court is merely staying Plaintiff's suit while the parties proceed to arbitration rather than dismissing it outright, the Court need not provide Plaintiff with separate notice of her rights and responsibilities pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam) (recognizing that a *pro se* plaintiff is entitled to "fair notice of the requirements of the summary judgment rule" if "confronted with the possibility of summary disposition of his case" (quoting *Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C. Cir. 1968))).